## LOCKET v. CHILD.

1. When one is summoned as a garnishee of joint judgment debtors, the service of the garnishment operates as the attachment of debts due to the defendants severally, and consequently there is no error in propounding an issue that the garnishee is indebted to one of the joint debtors.

2. A question with reference to the continuance of a cause cannot be revised in an appellate court. All such matters are purely of discretion, and will not be revised, although the court may have mistaken the rights of parties as to compelling the personal attendance of a witness. Independent of this, the remedy for an improper refusal to compel the attendance of a witness, is conceived to be by mandamus.

3. When the witness will be responsible to one of two persons, no matter which way, the verdict is a case of balanced interest as presented, and the witness competent.

4. Parol evidence is admissible to show that the assignment of a mortgage to one by name was intended for the benefit of another as well as himself.

5. The costs of the suit against the principal debtor do not constitute any part of the costs against the garnishee, but become part of the debt, and as such, are recoverable if the garnishee is indebted a sufficient sum to cover them as well as the principal debt.

Writ of Error to the County Court of Perry.

GARNISHEE suit by Child as the judgment creditor of William and Frederick Hartley against Locket. The affidavit asserts that Locket is indebted to William Hartley and Frederick Hartley. The answer of the garnishee asserts that he does not consider himself indebted to William Hartley, and proceeds with the statement of the transaction by reason of which the indebtedness is alledged on the other hand. The plaintiff filed the contestatory affidavit, that he believed the answer was incorrect, and thereupon the court ordered an issue to try whether the garnishee was indebted to William Hartley. The answer was filed at July term, 1843, and the cause was tried as well as continued several times. At the February term, 1846, the garnishee obtained leave to file an amended answer, in which he denied he was indebted to *William and Frederick* Hartley. The plaintiff then filed

an affidavit asserting this was incorrect, and by order of court an issue was tendered asserting the indebtedness of Locket to William Hartley. To this issue the plaintiff demurred, but was overruled by the court. A verdict was found ascertaining that Locket was indebted to William Hartley in a sum exceeding that of the judgment of the plaintiff against William and Frederick, and judgment was rendered that the plaintiff recover of the garnishee according to the verdict.

At the trial, Locket moved to continue the suit on the ground that a material witness was absent, but the witness being a practising physician, and the court ruling that the absence of such a witness was no ground for continuance, as his deposition might have been taken, refused the motion. The plaintiff at the trial introduced one John Hartley, the brother of the defendant in execution as a witness, and he testified that he was indebted to one McCraw about $800, which was secured by a mortgage on two slaves; that McCraw was about to sell the slaves to satisfy the debt, when witness applied to Locket to aid him, and said his brother, the defendant in execution, had a claim against one Gary, the son-in-law of McCraw, which McCraw would take as cash. This claim was a note on Gary, in the hands of one Nave for collection. Witness had tried to get this claim from his brother, but could not. Locket saw William Hartley, and told John to go to him and he could get it, and to have it indorsed to himself, after which, by indorsing it himself, and leaving it with Locket, he could take up the mortgage. Witness got the note from his brother, who would not however indorse it. Witness gave it to Locket, who passed it to McCraw as so much money in payment of the mortgage, and took from McCraw an assignment of the mortgage. Witness had not paid his brother for the claim on Gary, and did not consider himself bound to his brother. Understood that Locket was to be responsible to William. Locket at the same time paid to McCraw about $400. Locket sold the slaves under the mortgage—appropriated the money, first to refund the money he had advanced, and applied the remainder to discharge the $400 due by witness to him, and denied his responsibility to William for any thing. Witness denied

81

the right of Locket to do so, and says he never gave him any authority—had not paid him the $400—did not agree to pay it—considered he had paid Locket for his brother the worth of his brother's claim on Gary, and that Locket was bound to his brother—that Locket, and not himself, was to pay William—and did not consider himself as owing either of them any thing, as his property had been sold at or under value, and Locket had got it, and in it had enough to pay all the debts. The question was whether Locket was indebted to William Hartley for the amount of the Gary note. The garnishee objected to the competency of this witness, but the court allowed him, on the ground that his interest was balanced. The assignment of the mortgage by McCraw to Locket contains no condition, and the plaintiff offered to show by parol that it was made for the benefit of William Hartley, as well as for the benefit of Locket. The garnishoe objected to this evidence as varying the assignment, but the court allowed it. The garnishee excepted to the several rulings of the court against him.

A second bill of exceptions is sent up with the transcript, which bears date after that which has been set out, and it is said to have been filed by the plaintiff in the cause, although the exceptions are on the part of the garnishee. It states the facts with somewhat more detail than the other, and explains some parts of the first, which without this, would appear obscure.

GRAHAM of Perry, for the plaintiff in error.
MOORE and GARROTT, contra.

GOLDTHWAITE, J.—1. The garnishee insists that he is called on to answer only what he is indebted to the defendants jointly, and that it was irregular for the court to compel him to join issue on his indebtedness to one of them only, and that no judgment can be rendered on the verdict ascertaining such indebtedness. No authority has been cited to sustain this position, and we are constrained to think it untenable. There is no question that an execution on a joint judgment binds the separate goods of each defendant, and there seems no good reason why garnishee process should

not reach the separate debts in a similar manner. In Tillinghast v. Johnson, 5 Ala. Rep. 514, we say, "the levy of an attachment on property is a substitute for, and precisely equivalent to service of personal process, and such levy creates a lien on the property attached, whether it be a chattel seized by the sheriff, or a debt in the hands of a garnishee."

It is true that there we considered a debt due from an estate represented by the garnishee as its executor, was not attached by process of garnishment against the individual, but this decision proceeds on the ground that the debt is not due from him, but from the estste which he represents. Here, on the contrary, the debt is due from the garnishee to one of the debtors, and if instead of a debt, the thing attached was a chattel, there would be no doubt it would be bound, although belonging to one of the debtors only. It can scarcely be supposed that if a garnishee was to answer that he had the personal effects of one of the debtors in his possession, these would not be bound, and why should a different rule obtain when the subject of garnishment is a debt? We think the reasonable construction of the attachment law is, that the service of garnishee process, where there are joint defendants, has the effect to create a lien on debts due to each of the defendants separately. The consequence of this opinion is, that the answer of the garnishee should have negatived the existence of indebtedness to either of the defendants, and therefore, although it would have been more proper to have required such an answer, there was no injurious error in requiring the garnishee to join in the issue propounded, or in giving judgment on the verdict.

2. The question as to the continuance is one which cannot be revised in an appellate court. All such matters are purely of discretion, and not the subject of revision, although the court may have taken a mistaken view of what were the rights of the parties, to compel the personal attendance of the witness. Independent of this, if the court had refused improperly to compel the attendance of a witness, it is conceived the remedy would be by mandamus.

3. The ground assigned as a reason why the witness should have been rejected is, that he shows himself to be an agent in the transaction between Locket and William Hart-

ley, and that *prima facie* he is bound to William Hartley for the value of the note on Gary. From the obscurity of the bill of exceptions, there is some difficulty in ascertaining, without the aid of the second, what was the motive which induced Locket to aid the witness in the mortgage transaction. We infer from the statement of what the witness said, that debts were due both to McCraw and Locket, but that the former had the priority of lien. Assuming this to be the case, the note of Gary, if lost to the witness, created a debt there, and if lost to Locket, left the debt due by the witness to him, undiminished to the same extent. It is then clear, that however the suit may result, the witness is still the debtor, either to his brother or to Locket, and thus a case of balanced interest is presented, which, according to all the cases, lets in the witness. [Hallet v. O'Brien, 3 Ala. R. 455.]

4. The allowance of parol evidence to show that the assignment of the mortgage by McCraw was made as well for the benefit of William Hartley as of Locket, does not seem to us to be liable to exception on the ground that it varies the effect of the instrument. The effect of the assignment is to aid in conveying the title of the slaves to Locket, but the object for which the title is conveyed is as much open to explanation as it would be if these had been conveyed by any other mode of assurance. When therefore it was proposed to be shown that the assignment was for the benefit of Hartley in part, it was nothing more in effect than the recognition by Locket, that a part of the funds paid out to McCraw were derived from that source. We think the evidence was properly admitted.

5. There is one other objection to the judgment. It is said the garnishee is not responsible for the costs of the suit against the principal debtors. He certainly is not thus responsible, as constituting a part of the costs of the garnishee suit, but as these costs form a part of the debt which is owing to the plaintiff, and as the debt which the garnishee owes is sufficient to cover these as well as the principal sum, he was rightfully condemned to pay them, and will be allowed their amount as a payment to Hartley, the debtor.

There seems to be no error in the record. Judgment affirmed.